AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
_____ District of _____

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)* | )<br>)<br>) Case No. 20MJ3193<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☐ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| | |

The application is based on these facts:

☐ Continued on the attached sheet.
☐ Delayed notice of \_\_\_\_\_ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*R Liston*
Applicant's signature

_____
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ *(specify reliable electronic means)*.

Date: _____

*Daniel G Butcher*
Judge's signature

City and state: _____

_____
Printed name and title

# AFFIDAVIT

I, Special Agent Robert Liston, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

>  Samsung Galaxy J2 Cellular Phone
>  Model No. SM-J260T1
>  Seizure No. 2020250400223001
>  ("Target Device")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and 963 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Dora Lee Moctezuma-Marcial ("MOCTEZUMA") and Javier Molina ("MOLINA") for importing approximately 33.66 kilograms (74.05 pounds) of methamphetamine and 3.96 kilograms (8.73 pounds) of heroin from Mexico into the United States. *See United States v. Molina and Moctezuma*, Case No. 3:20-CR-02045-CAB. The Target Device is currently in the possession of Homeland Security Investigations and located at 880 Front Street, San Diego, CA 92101.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I am a Special Agent (SA) with Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) within the Department of Homeland Security (DHS), having been so employed since September 2009. I am currently assigned to the HSI Special Agent in Charge (SAC) San Diego, California Child Exploitation group. I have

attended and successfully completed the Criminal Investigator Training Program (CITP) and the Immigration and Customs Enforcement Special Agent Training (ICESAT) located at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. I am currently assigned to the Internet Crimes Against Children (ICAC) Task Force in San Diego. This task force includes members of the San Diego Police Department, San Diego County Sheriff's Department, U.S. Postal Inspection Service, Federal Bureau of Investigation, Naval Criminal Investigative Service, U.S. Attorney's Office and the San Diego County District Attorney's Office. Prior to being assigned to the Child Exploitation Group, I was assigned to the HSI Gangs and Weapons group, Narcotics Trafficking Group, as well as the Human Trafficking/Smuggling group. As a federal agent, I am authorized to investigate violations of laws of the United States and I am a law enforcement officer with the authority to execute warrants issued under the authority of the United States. In preparation of this affidavit, I have discussed the facts of this case with other law enforcement agents and officers within HSI and the ICAC task force.

4. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed

narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within the United States.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

    a.    tending to indicate efforts to import controlled substances from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Device; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7. On June 20, 2020, at approximately 10:00 a.m., MOCTEZUMA, a United States citizen, applied for entry into the United States from Mexico through the San Ysidro Port of Entry in vehicle lane #23. MOCTEZUMA was the driver and registered owner of a Nissan Versa bearing California license plates ("the vehicle"); MOLINA was the only passenger in the vehicle.

8. In pre-primary, a Human and Narcotic Detection Dog alerted to the undercarriage on the passenger side of the vehicle. A Customs and Border Protection Officer received two negative Customs declarations from MOCTEZUMA, who stated they were crossing the border to go to Santa Ana, California. A CBPO operating the Z-Portal X-Ray machine observed anomalies in the gas tank and quarter panels of the vehicle.

9. Further inspection of the vehicle resulted in the discovery of 72 packages concealed in the rear doors, rear quarter panels, and gas tank of the vehicle. Of the 72 packages, 69 had a net weight of 33.66 kilograms (74.05 pounds) and a sample field-tested positive for the characteristics of methamphetamine; a DEA chemical analysis report indicates the three other packages contained heroin with a net weight of 3.96 kilograms (8.73 pounds).

10. MOCTEZUMA and MOLINA were placed under arrest at approximately 10:00 a.m.; they were subsequently charged with a violation of Title 21, United States Code, 952 and 960, importation of a controlled substance and transported to the

Metropolitan Correctional Center.

11. The Target Device was seized at the time of arrest. MOCTEZUMA was advised of her *Miranda* rights and elected to answer questions without an attorney present. MOCTEZUMA denied knowledge of the narcotics in her vehicle. She stated she was going to Santa Ana, California to get the title of the Nissan Versa. MOCTEZUMA stated she was visiting Rosarito, Mexico with her boyfriend, MOLINA. She added that two days prior, they crossed into the United States from Mexico and returned to Rosarito, Mexico the same day. MOCTEZUMA stated that on June 19, 2020 (the day before the arrest), MOLINA's uncle borrowed the vehicle to go to the store and had it for approximately 25 minutes. She stated no one else had control of the vehicle prior to their crossing on June 20, but noted the vehicle was parked in a "real bad neighborhood." She confirmed the Target Device was her cell phone, signed a consent form authorizing a search of the Target Device, and provide the passcode.

12. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Device. In light of the above facts and my experience and training, there is probable cause to believe that MOCTEZUMA was using the Target Device to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as MOCTEZUMA, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request

permission to search the Target Device for data beginning on May 20, 2020, up to and including June 20, 2020.

## METHODOLOGY

13. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

14. Following the issuance of this warrant, I will collect the Target Device and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

15. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

16. As noted above, MOCTEZUMA consented to a search of the Target Device during her post-arrest interview and provided her passcode. Pursuant to that consent, I performed a manual search and attempted to make a forensic copy of the Target Device on the date of arrest. On or about July 22, 2020, I determined the forensic copy was incomplete and contained only images from the Target Device.[1]

## CONCLUSION

17. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Device will yield evidence of MOCTEZUMA's violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

---

[1] This search warrant is sought in an abundance of caution. Notwithstanding MOCTEZUMA's prior consent to search, I have not included herein any information obtained from the consent searches of the Target Device, and I ask that the Court not consider the fact of the consent searches in determining whether probable cause exists for the requested warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*R Liston*
_____
Special Agent Robert Liston
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this  4th  day of August, 2020.

_____
Honorable Daniel E. Butcher
United States Magistrate Judge

## **ATTACHMENT A**

PROPERTY TO BE SEARCHED

The following property is to be searched:

>Samsung Galaxy J2 Cellular Phone
>Model No. SM-J260T1
>Seizure No. 2020250400223001
>("Target Device")

The Target Device is currently in the possession of Homeland Security Investigations and located 880 Front Street, San Diego, CA 92101.

## **ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of May 20, 2020, up to and including June 20, 2020:

a.  tending to indicate efforts to import controlled substances from Mexico into the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, heroin, or some other federally controlled substance, from Mexico into the United States;

d.  tending to identify travel to or presence at locations involved in the importation controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.